# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Bregida Eggermann, | |
|           Plaintiff, | |
|   v. | |
| Lake Central School Corp., | Civil Action No. 2:12-CV-508-JVB |
|           Defendant. | |

**OPINION AND ORDER**

In this lawsuit, Plaintiff Bregida Eggermann complains of discriminatory practices during a Reduction-in-force (RIF) undertaken by Defendant, Lake Central School Corporation (Lake Central), which was necessitated by a significant budgetary shortfall. Plaintiff, a Filipino-American who was 59 years old at the time of the RIF, worked as a janitor for Defendant from 2008 until July 2012. Defendant allowed Plaintiff to re-interview for her job, but did not rehire her, which Plaintiff believes was due to race and age discrimination that was both inherent in the process and manifested by comments from her direct supervisor. She asserts that Defendant's conduct violated the Age Discrimination in Employment Act (ADEA), Title VII of Civil Rights Act, and 42 U.S.C.§ 1981. Plaintiff's Complaint also outlines a 42 U.S.C. § 1983 claim that alleges Defendant's discriminatory policies violated her equal protection and procedural due process rights. Lastly, Plaintiff avers that Defendant's conduct constituted the state tort of intentional infliction of emotion distress. After discovery closed, Defendant moved for summary judgment on all claims. Upon review, the Court grants summary judgment in part and denies in part as detailed below.

**A. Background**

Plaintiff, after dropping out of high school three months before graduating, emigrated from the Philippines to this country in 1975. (DE 34-2, Pl.'s Dep. 6:1–14.) Three months after her arrival, Plaintiff began working at the Solo Cup Company in Stony Island, where she remained for the next decade. (Pl.'s Dep. 6:18–7:7.) Following her time at the Solo Cup Company, Plaintiff stayed home to raise her children for 15 years before returning to the workforce. Plaintiff worked at a series of fast food restaurants in Northwest Indiana before Defendant hired her in September 2008. (Pl.'s Dep. 7:12–8:25.)

Kevin Demantes served as Plaintiff's supervisor and he, along with Principal Scott Graber, was responsible for evaluating Plaintiff's job performance. (DE 39-1, Pl.'s Aff. ¶ 13.) The Custodial Employee Evaluation form ranks 13 separate attributes on a three-tiered scale: acceptable, needs improvement, and unacceptable. Demantes evaluated plaintiff three times: November 2008, January 2011, and November 2011.[1] (DE 39-8, Ex. H at 1–3.) In each of these evaluations, he ranked Plaintiff's performance as acceptable on all thirteen performance attributes. (*Id.*) The only other assessments of Plaintiff's job performance are the numerous letters of recommendation written by Demantes and other school employees that describe her as a diligent, hardworking, and conscientious employee.[2] (DE 39-10, Ex. J 1–9.)

Plaintiff's job performance was allegedly the subject of discussion during a meeting between Graber, Demantes, and Plaintiff in January 2012. Sometime before the meeting, Demantes approached Plaintiff and relayed that Principal Graber decided that she was no longer authorized to work overtime. (DE 39-1, Pl.'s Aff. ¶ 15.) Confused by this directive from her

---

[1] Kenneth Newton, an Assistant Principal at Clark Middle School, signed the November 2011 evaluation. Scott Graber signed the other two evaluations.
[2] The Court recognizes that "the general statements of co-workers, indicating that a plaintiff's job performance was satisfactory, are insufficient to create a material issue of fact as to whether a plaintiff was meeting her employer's legitimate employment expectations at the time she was terminated," *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002), but simply acknowledges that these letters provide additional context.

supervisor, Plaintiff requested a meeting with Graber and Demantes, which eventually occurred in January 2012. (*Id.* at ¶ 19.) Graber memorialized this meeting and all parties agreed on the four outcomes of the meeting: (1) Plaintiff asserted that she was competent to work overtime and her struggle during an overtime shift was caused by a lack of training; (2) Demantes had received complaints regarding Plaintiff's inability to operate some school equipment because of her lack of training; (3) Plaintiff would seek training from Demantes on this equipment; and (4) Plaintiff was placed on an overtime "probationary period" and would be evaluated to ensure she could undertake future overtime opportunities. (DE 39-4, Mem. 1.)

In February 2012, Al Gandolfi, the Assistant Superintendent for Lake Central School Corporation, informed the custodial staff that Defendant was eliminating some janitorial positions as part of a RIF. (Pl.'s Dep. 35:6–23.) Gandolfi explained that the RIF was necessary because Lake Central needed to cut 7.3 million dollars from its budget over the course of three years. (DE 39-7, Gandolphi Dep. 101:2–8.) Gandolfi told the eighty-eight janitors employed by Lake Central that they could reapply for the sixty-eight positions that would exist post-RIF.[3] (DE 35, Mem. Summ. J. at 3.) Just prior to this announcement, Plaintiff learned that the seniority provision in the employee handbook, which directed that the most recently hired janitor would be the first to be laid off, was no longer in effect. (Pl.'s Dep. 31:2–32:15.) Instead, Defendant would assign administrators to interview and rehire janitors based on their attendance record and employee evaluations. (Pl.'s Dep. 32:14–18.)

Defendant assigned Gandolfi and Bill Ledyard, the Director of the Facilities, to determine which janitors to rehire. Gandolfi and Ledyard, after receiving input from Kevin Demantes and reviewing her employment record, decided not to rehire Plaintiff and eleven other janitors. (DE

---

[3] Eight positions were eliminated by "attrition," which accounts for the reduction of only 12 janitors. (DE 35, Mem. Summ. J. at 3.)

3

35, Mem. Summ. J. at 3.) Defendant contends that it chose not to rehire Plaintiff because her evaluations revealed "minimally acceptable" performance and that she "required more supervision and instruction than other employees in the custodial department." (*Id*. at 3, 9.)

Plaintiff disputes every aspect of Defendant's account of her dismissal. Plaintiff maintains that she never received a negative performance evaluation throughout her tenure as a janitor for Defendant. Instead, Plaintiff contends that Demantes discriminated against her because of her race and her age. For instance, Plaintiff asserts that Demantes directed numerous derogatory comments towards her, including references to her being "over the hill," unable to speak English, and not being a good fit because of these alleged shortcomings. This outward manifestation of discrimination is particularly troubling to Plaintiff since Demantes provided direct input to the ultimate decision-makers on what custodians to rehire.

**B.     Summary Judgment Standard**

A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) also requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**C. Defendant's Motion for Summary Judgment**

After the close of discovery, Defendant moved for summary judgment on all five of Plaintiff's claims. Plaintiff's ADEA, Title VII, and § 1981 claim are all governed by the same standard, the *McDonnell Douglas* indirect burden-shifting test, save one prong in the ADEA claim, so these claims can largely be addressed in concert with one another. Interestingly, Plaintiff devoted her entire Response to addressing these three claims. Plaintiff failed to discuss, mention, or make any arguments to advance her § 1983 claim or her state tort claim. As a result, the Court will focus on the three contested issues before briefly addressing the remaining two claims.

**(1)** *Plaintiff's Age Discrimination in Employment Act Claim*

Plaintiff and Defendant both focus their arguments regarding the ADEA claim on the familiar *McDonnell Douglas* four-factor test for indirectly proving discrimination, which governs ADEA, Title VII, and § 1981 claims. Under *McDonnell Douglas*, to establish a prima facie age discrimination claim using the indirect method, Plaintiff must demonstrate that: (1) she was over age forty; (2) her job performance met her employer's expectations; (3) she suffered an adverse employment action; and (4) the employer treated "similarly situated" younger employees more favorably. *See Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 750–751 (7th Cir. 2006). Defendant concedes that Plaintiff satisfies the first and third prongs of this test. Defendant contends that Plaintiff was not meeting its legitimate employment expectations and that she failed to identify any similarly situated employees outside the protected class who were treated more favorably. However, in this case, this is the incorrect standard.

This case is more akin to a mini-RIF where "the job really was not eliminated at all; because the fired employee's duties were absorbed by others, they were effectively replaced, not eliminated." *Filar v. Bd. of Educ.*, 526 F.3d 1054, 1060 (7th Cir. 2008). "[T]he relevant factual inquiry in a reduction-in-force case is not the same as a mini-RIF case." *Id*. As a result, the final prong is not whether Defendant treated similarly situated employees outside the protected class more favorably, but, instead, whether "her duties were absorbed by younger workers who were retained following the mini-RIF." *Id.* (citing *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690–691 (7th Cir. 2006). If Plaintiff can establish her prima facie case, then the burden shifts to Defendant to "articulate some legitimate, nondiscriminatory reason" for her termination. *See McDonnell Douglas*, 411 U.S. 792, 802 (1973). If Defendant provides an acceptable

justification, it is then up to Plaintiff to show Defendant's justification is pretextual. *See Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). The Plaintiff bears the ultimate burden of proof. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006).

Defendant asserts that Plaintiff was not meeting its legitimate expectations and attempts to justify this position in two ways. First, Defendant avers that Plaintiff's employee evaluations indicate that her performance has been only minimally acceptable. Second, Defendant contends that it considered disciplinary action taken against Plaintiff shortly before the RIF. Defendant maintains that it disciplined Plaintiff during the meeting she requested with Principal Graber and Demantes to discuss her ability to work overtime.

At this stage, Defendant's justifications are simply not enough to demonstrate that Plaintiff was not meeting their legitimate expectations. Notably, all of Plaintiff's evaluations show that her supervisors deemed her performance acceptable. Moreover, there is not even a section to rank a custodian's performance as "minimally acceptable" on the evaluation form. The only options are Acceptable, Needs Improvement, and Unacceptable. In addition, at this stage of the case, it is difficult to classify a meeting requested by Plaintiff as one that resulted in disciplinary action. For purposes of summary judgment, the Court views the meeting in question as an employee requesting feedback from her supervisors so she is more effective in accomplishing her duties. Accordingly, the Court finds that Plaintiff has presented sufficient evidence that her performance was meeting her employer's legitimate expectations.

To satisfy the fourth prong of her prima facie case, Plaintiff must only show that younger employees absorbed her duties. *Glover v. U.S. Healthworks*, 326 Fed. Appx. 964, 967 (7th Cir. Ind. 2009) (citing *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007)). Plaintiff contends that Principal Graber admitted that this occurred during his deposition (DE 39, Resp. 20; DE 39-5, Graber Dep. 92:9–93:24.), and she is correct. As a result, the Plaintiff has

satisfactorily supported a prima facie case for age discrimination in a mini-RIF and the burden now shifts to Defendant to articulate some legitimate, nondiscriminatory reason for the decision not to rehire her.

According to Defendant, it its decisions during the RIF were based upon each janitor's attendance record and employee evaluations, which are legitimate non-discriminatory grounds for their decisions. Correspondingly, Defendant maintains that it did not rehire Plaintiff because it disciplined her shortly before the RIF and she had minimally acceptable performance evaluations. However, Plaintiff has successfully rebuffed Defendant's explanations as pretextual.

"Pretext . . . means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). An employee may establish pretext indirectly by proving one of the following: "(1) Defendant's explanation had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) . . . the reason stated was insufficient to warrant the [adverse employment action]." *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1133 (7th Cir. 1994). In trying to establish that an employer's explanation is pretextual, the plaintiff must "focus on the specific reasons advanced by the defendants." *Hughes v. Brown*, 20 F.3d 745, 747 (7th Cir. Ill. 1994). When an employer alleges that a dismissed employee has failed to meet its legitimate expectations, "the credibility of the employer's assertion is at issue for both the second element of the plaintiff's prima facie case and the pretext analysis." *Graham v. Ill. Dep't of Children & Family Servs.*, 522 Fed. Appx. 350, 351 (7th Cir. Ill. 2013) (citing *Elkhatib v. Dunkin Donuts*, 493 F.3d 827, 831 (7th Cir. 2007)).

Plaintiff has proffered numerous potential examples of pretext in an attempt to satisfy her burden. However, the Court will focus on only three of them: (1) inconsistencies between her performance evaluations and the determinative factors employed by Gandolfi and Ledyard; (2) the classification of her meeting with Demantes and Graber as disciplinary action; and (3) the

8

suspicious timing of a policy change regarding seniority during a RIF. (DE 39, Resp. 16–20.) These three instances, considered in concert with one another, satisfy Plaintiff's burden of showing that Defendant's reasons for her dismissal are pretextual.

First, Defendant contends that the determinative factors in making a rehiring decision was an employee's attendance history and employee evaluations. These are obviously legitimate considerations for an employer to utilize. However, Plaintiff seems to have a perfect attendance record and her supervisor always deemed her work quality as acceptable, which is the highest classification on Defendant's custodial employee evaluation form. This inconsistency leads the Court to conclude that the justification for her dismissal were pretextual because Defendant's purported reasons for its decision have no basis in fact.

Next, each side offers a competing view over how to characterize the meeting between Graber, Demantes, and Plaintiff. Defendant maintains that the meeting was disciplinary action that evidences Plaintiff's poor performance. Plaintiff counters that she requested the meeting to clarify a comment made to her by Demantes, her direct supervisor. At the summary judgment stage, the Court cannot deem this meeting as being indicative of Plaintiff's lackluster work performance. It is undisputed that Plaintiff requested this meeting and Graber's memorandum memorialized the subject matter of the meeting. At this stage, the Court must infer that this was an instance where an employee wanted to clear the air directly with her supervisor, rather than work under a cloud of uncertainty. In fact, the meeting resulted in her supervisor promising to train her more thoroughly so she could adequately perform during overtime shifts.

Lastly, while suspicious timing of events cannot prove pretext alone, it does provide additional context that is useful to the Court. In this case, Plaintiff contends, and Defendant does not dispute, that shortly before the RIF the employee manual expired. The expired employee manual provided that "[i]n the event a reduction-in-force is deemed necessary by the

9

administration, employees shall be reduced in an order that reduces the least senior member first." (DE 39-17, Ex. Q.) In the new manual, adopted shortly before the RIF, this provision was notably absent. When coupled with the inconsistencies discussed above and the others raised in Plaintiff's Response, eliminating the seniority provision is suspicious and does allow the Court to make a legitimate inference of a discriminatory purpose. *See, e.g., Kowal-Vern v. Loyola Univ.*, 66 Fed. Appx. 649, 652 (7th Cir. Ill. 2003) (citing *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 628-29 (7th Cir. 2001) ("[S]uspicious timing alone cannot create an issue as to pretext if [Plaintiff] cannot prove through other circumstantial evidence that she was terminated for a reason other than that proffered by [Defendant].") In this case, Plaintiff has presented circumstantial evidence that Defendant did not rehire her due to race and age discrimination illustrated by the comments of her supervisor who allegedly provided direct input to Defendant's final decision-makers implementing the RIF

As a result, the Court finds, for purposes of summary judgment, that Plaintiff has met her burden for showing that Defendant's legitimate non-discriminatory reasons for not rehiring her were pretextual. Accordingly, the Court denies Defendant's motion for summary judgment regarding Plaintiff's ADEA claim.

*(2) Plaintiff's Title VII Claim*

When pressing a Title VII race discrimination claim under the indirect method, a Plaintiff must satisfy the traditional *McDonnell Douglas* four-factor test. As outlined above, the Court has found that Plaintiff was meeting her employer's legitimate expectations and Defendant concedes that Plaintiff was a member of a protected class who suffered an adverse employment action. Consequently, Plaintiff must only demonstrate that Defendant treated similarly situated employees outside of the protected class more favorably. If Plaintiff succeeds, the Defendant

again has the opportunity to present a legitimate, non-discriminatory reason for her termination, which Plaintiff must then rebut by showing that Defendant's justification is pretextual.

To determine whether two employees are similarly situated, "a court must look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). A plaintiff need not "'present a doppelganger who differs only by having remained in the employer's good graces,' but a comparator, to be suitable, must resemble the plaintiff enough to allow for a meaningful comparison." *Graham v. Ill. Dep't of Children & Family Servs.*, 522 Fed. Appx. 350, 352 (7th Cir. 2013) (citing *Filar v. Board of Educ. of City of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008)). This test demands a flexible, common-sense approach with requirements that vary from case to case. *McGowan v. Deere & Co.*, 581 F.3d 575, 579–580 (7th Cir. 2009). The central purpose of this analysis is to discern whether "there are sufficient common factors between the plaintiff and another employee to allow for a meaningful comparison in order to divine whether discrimination was involved in an employment decision." *Id.*

In this case, Plaintiff has presented three potential comparators: Kathi Seef, Cathy Winn, and Diana Del Real. Defendant contends these individuals are not similarly situated, but is incorrect. Defendant employed all the comparators as janitors during the same time-period as Plaintiff. Moreover, Defendant supervised and evaluated Plaintiff and the comparators in the same manner. These shared characteristics allow for a meaningful comparison.

All of the comparators are Caucasian and range in age from 38 to 53, which plainly place them outside Plaintiff's protected class. (DE 39, Resp. 4.) Del Real and Winn's evaluations diverge from Plaintiff's evaluations significantly. They each possess evaluations that indicate they have issues with punctuality and attendance. (DE 39-11, Ex. K at 2; DE 39-13, Ex. M at 1–2.) Moreover, Del Real had evaluations, albeit both from 2009, indicating that her punctuality

"Needs Improvement" or is "Unacceptable." (DE 39-13, Ex. M at 1–2.) Similarly, Defendant evaluated Kathi Seef in October 2010, and indicated that she did not clean classrooms very well, was not showing any signs of improved performance, despite feedback on her shortcomings. (DE 39-12, Ex. L at 1–2.) Defendant rehired all the comparators, even though they had objectively worse evaluations than Plaintiff did with respect to both attendance and work quality. Accordingly, the Court finds that Plaintiff has adequately presented similarly situated janitors from outside her protected class whom Defendant treated more favorably, thus establishing a prima facie Title VII claim.

In this case, it is unnecessary for the Court to rehash the burden shifting analysis form above. Plaintiff, for purposes of summary judgment, has sufficiently demonstrated to the Court that Defendant's purported reasons for her dismissal were pretextual. Accordingly, the Court denies Defendant's Motion for Summary Judgment, as it addresses Plaintiff's Title VII claim.

### (3) Plaintiff's 42 U.S.C. § 1981 Race Discrimination Claim

Plaintiff's third claim alleges that Defendant intentionally discriminated against her in violation of § 1981 by fostering a hostile work environment, improperly denying her job promotions and assignments on the basis of race, and retaliating against her for asserting her rights when she confronted a supervisor's discrimination. (DE 1, Compl. 7–8.). The Seventh Circuit has routinely noted, "[a]lthough section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 940 (7th Cir. 1996); *see also McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). Accordingly, the Court's analysis from above is equally applicable, which necessarily entails that Defendant's Motion for Summary Judgment, as it addresses the § 1981 claim, must be denied.

*(4) Plaintiff's 42 U.S.C. § 1983 and Intentional Infliction of Emotional Distress Claims*

Plaintiff outlines in her Complaint a claim under § 1983 that alleges Defendant violated her equal protection and due process rights under the Fifth and Fourteenth Amendments and also that Defendant's conduct resulted in an intentional infliction of emotional distress. Defendant subsequently moved for summary judgment on each of these claims. In her Response, Plaintiff failed to respond and develop these claims in any manner whatsoever.

Federal Rule of Civil Procedure 56(e) provides that a court should grant summary judgment, if appropriate, when the adverse party fails to respond. Fed. R. Civ. P. 56(e); *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994). Likewise, a non-moving party waives those issues when it fails to respond to arguments proffered in the motion for summary judgment. *Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003).

In this case, it is appropriate for the Court to grant Defendant's Motion for Summary Judgment as it concerns both of these claims. First, Defendant contends, and Plaintiff does not dispute, that Plaintiff never filed a tort claims notice as required by the Indiana Tort Claims Act. This fact alone makes summary judgment on the intentional infliction of emotional distress claim appropriate. *See* Ind. Code § 34-13-3-8; *see also Budden v. Board of Sch. Comm'rs*, 680 N.E.2d 543, 548 (Ind. App. 1988) ("Generally, the failure to comply with the notice requirements will subject a claim to summary judgment.). Moreover, to succeed on the merits of this claim, Plaintiff would be required to show that Defendant, or Defendant's agents, engaged in "extreme and outrageous conduct [that] intentionally or recklessly cause[d] severe emotional distress." *Conwell v. Beatty*, 667 N.E.2d 768, 775–776 (Ind. Ct. App. 1996). Plaintiff's positive interactions with school officials before and after her dismissal, which includes her receipt of

numerous letters of recommendation, further convince the Court that Plaintiff's claim would fail on the merits, even if she had complied with the Indiana Tort Claims Act notice requirements.

Second, turning to Plaintiff's § 1983 race discrimination claim, Plaintiff has not buttressed her Complaint with any additional argument or specifically identified what policy or practice harmed her. Her Complaint alleges that Defendant denied her due process and violated her right to equal protection. First, because of her failure to press an argument, summary judgment for her § 1983 equal protection claim is appropriate. While a prima facie § 1983 equal protection claim can be proven using the same indirect method utilized in a Title VII claim, there is one significant difference that is fatal to Plaintiff's claim. That is, "an equal protection claim is against individual employees," not the employer. *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 926 (7th Cir. 2007). Plaintiff fails to identify which individual employees are responsible for the denial of equal protection or name them in the Complaint. Accordingly, Defendant's Motion for Summary Judgment, as it relates to Plaintiff's § 1983 equal protection claim, is granted.

Next, Plaintiff's Complaint seems to allege a violation of her procedural due process rights, in violation of the Fourteenth Amendment. The Court's uncertainty on this potential claim is due to Defendant's failure to discuss the issue in its Motion for Summary Judgment and Plaintiff's corresponding failure to bolster this claim in her Response. Nevertheless, the Court will address this issue to ensure clarity as this case proceeds forward.

To demonstrate a violation of procedural due process rights, a plaintiff must demonstrate that "there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Price v. Bd. of Educ.*, 755 F.3d 605, 607 (7th Cir. 2014) While the Fourteenth Amendment protects property rights, it does not create them. *Id.* Instead, property rights spring from" existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of

entitlement to those benefits." *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509-10 (7th Cir. 2013) (citation omitted). In terms of employment, a protected property interest may "arise from a statute, regulation, municipal ordinance, or an express or implied contract." *Covell v. Menkis*, 595 F.3d 673, 675–676 (7th Cir. 2010).

In this case, Plaintiff has not identified what created a property interest in her job as a school janitor. She does not point to a contract, a collective bargaining agreement, or an Indiana state law that would satisfy this prong of the procedural due process doctrine. Accordingly, summary judgment on this claim is proper.

**E. Conclusion**

The parties present two vastly different stories of what occurred, which creates numerous issues of disputed material facts. Accordingly, the Court grants Defendant's motion for summary judgment (DE 33) relating to Plaintiff's § 1983 and intentional infliction of emotional distress claims and denies the motion on all other grounds.

SO ORDERED on September 23, 2015.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE